608 P.2d 1119

Ruby APPELMAN et al., Plaintiffs-Appellees and Cross-Appellants,

v.

George BEACH, Assessor of Bernalillo County, Timothy Eichenberg, Treasurer of Bernalillo County, and Board of County Commissioners of Bernalillo County, Defendants-Appellants and Cross-Appellees.

No. 12199.

Supreme Court of New Mexico.

March 21, 1980.

McCulloch, Grisham & Lawless, Thomas L. Grisham, Albuquerque, for defendants-appellants and cross-appellees.

Geer, Handley & Hunt, Hunter L. Geer, Albuquerque, for plaintiffs-appellees and cross-appellants.

Toney Anaya, Atty. Gen., Richard C. Bosson, Asst. Atty. Gen., Santa Fe, amicus curiae.

## OPINION

EASLEY, Justice.

The Bernalillo County Assessor, Treasurer, and Board of County Commissioners (County) appeal from and *seek affirmation* of the judgment of the trial court in Appelman's, and numerous other plaintiffs' (Appelman), suit against the County. Appelman's suit sought a refund of 1976 and 1977

property taxes or damages for excess property taxes paid and a reduction of her property tax valuation. Appelman cross-appeals from the trial court's judgment, asserting that it is not the proper remedy to relieve her injuries. We affirm.

At issue here is whether the legislative repeal of Section 7–36–17, N.M.S.A.1978, renders the trial court's declaration that this statute is unconstitutional, a moot question. We also consider whether the proper remedy was ordered by the trial court. Since we conclude that it was, we do not address the other issues raised by Appelman in her cross-appeal concerning joinder, bar to recovery for taxes paid because of statutory limitations, and bar to rebates for failure to comply with statutory requirements.

In 1974, the County began the first county-wide program of revaluation of county property for property tax purposes since 1967. New assessed valuations were placed on various parcels of land up through late 1976. Although only approximately sixteen per cent of property in Bernalillo County had received new assessments by late 1976, Appelman alleges that the revaluation program was either discontinued or drastically curtailed. The County admits that it was cut back. The trial court made no findings as to this issue. Clearly, this situation left County taxpayers paying property taxes at different rates: some, including Appelman, at full market value and the majority at 1967 assessed values.

In 1977, the Legislature passed Section 7–36–17, which limited increases in assessments on real property in the state caused by market factors, as opposed to rezoning, new improvements, and other specified actions, to ten per cent per annum. Whether the County cut back or halted the reappraisal program because of the passage of this statute is not clear from the record. This statute obviously did not offer any relief to Appelman. It merely limited the amount of taxes she had to pay in the future. As to undervalued property not yet reappraised, it would take quite a few years, in many instances, at ten per cent

increases in revaluation per year, to reach full market value.

In late 1977, Appelman filed her suit seeking a refund or damages for taxes paid and a reduction in her property valuation. Approximately $7,100,000.00 is being claimed by Appelman and other Bernalillo County taxpayers on the basis of discriminatory and unequal taxation. N.M.Const., Art. II, § 18 and Art. VIII, § 1; U.S.Const. Amend. XIV. Appelman did not and does not question the constitutionality of Section 7–36–17. In fact, she clearly would like to take prospective advantage of it. She would like to have her property tax valuation reduced to the level of other county non-reassessed property and then have her reassessments limited to ten per cent per year.

Although the constitutionality of the statute was not raised by any party, the trial court declared the statute unconstitutional and ordered the County to provide adequate funding to promptly continue and complete the property reappraisal program. After this appeal and cross-appeal had been filed, the Legislature repealed Section 7–36–17. N.M.Laws 1979, ch. 268, § 3.

■ The first issue we need address is whether the legislative repeal of this statute rendered the court's determination that it was unconstitutional a moot point. The County concedes that it is a moot point; Appelman claims it is constitutional. The only New Mexico case on point is *State v. McNabb*, 38 N.M. 92, 28 P.2d 521 (1933). McNabb was the acting State Comptroller and the State sought and was granted a writ of mandamus ordering McNabb to give the State certain records in his office. This Court dismissed the appeal and stated that the repeal of the statute pursuant to which the State sought access to the records was one of the factors rendering the question on appeal moot.

The United States Supreme Court, in two recent cases, reached the same result after the relevant statutes, challenged on constitutional grounds, were repealed. *Kremens v. Bartley*, 431 U.S. 119, 97 S.Ct. 1709, 52 L.Ed.2d 184 (1977); *Diffenderfer v. Central*

*Baptist Church,* 404 U.S. 412, 92 S.Ct. 574, 30 L.Ed.2d 567 (1972). We do not need to address whether Section 7–36–17 is constitutional because this Court has repeatedly stated that it will not decide abstract or moot questions. *New Mexico Health & Social Services Dept. v. Chavez,* 85 N.M. 447, 513 P.2d 184 (1973); *New Mexico Bus Sales v. Michael,* 68 N.M. 223, 360 P.2d 639 (1961).

By this holding we are not saying that a party who has been injured by an unconstitutional statute which has been repealed is not entitled to relief. We are merely holding that it is not proper for this Court to decide whether this statute is constitutional or not. If Appelman had paid taxes pursuant to an allegedly unconstitutional statute which was later repealed, this Court would have to examine its constitutionality. If it were found to be unconstitutional, then Appelman would be entitled to a refund of her taxes paid *pursuant to* the unconstitutional statute. *See Dale Bellamah Co. v. Bernalillo County,* 92 N.M. 615, 592 P.2d 971 (1978). But Appelman did not pay her property taxes here pursuant to a statute the constitutionality of which is in question. Rather, she wishes to have applied to her taxes the limit established by Section 7–36–17. The County's actions here, which resulted in County taxpayers paying property taxes at different rates, does raise a constitutional question, but a different one, which is discussed below in the context of the proper remedy to which Appelman is entitled.

■ Appelman claims that the relief afforded her by the trial court does not redress her injuries. Since she has been paying more property taxes than other Bernalillo County property owners similarly situated, she claims she should have been granted the relief she requested: recovery of and damages for taxes paid and a rollback in her property valuation. Merely ordering the County to continue its reappraisal program was not the appropriate remedy, Appelman claims.

In *Skinner v. New Mexico State Tax Commission,* 66 N.M. 221, 223–4, 345 P.2d 750, 752 (1959), this Court stated:

In New Mexico, it has long been the rule that a taxpayer who is not assessed more than the law provides has no cause for complaint in the courts in the absence of some well-defined and established scheme of discrimination or some fraudulent action, (citations omitted). The taxpayer's remedy is to have the assessing authority raise the value on the property claimed to be, valued too low to a level with his own, (citations omitted).

Appelman had her property reappraised at full market value. Section 7–36–15, N.M.S.A.1978, the New Mexico statute relevant to the times in question, established the general method of valuation for property taxation purposes: its market value. Appelman was not "assessed more than the law provides".

Appelman pled neither fraud nor intentional discrimination. Further, there is nothing in the record to indicate any "well-defined and established scheme of discrimination or some fraudulent action." *Skinner, supra; In re Taxes Assessed Against Property of Scholle, etc.,* 42 N.M. 371, 78 P.2d 1116 (1938); *Ranch & Cattle Co. v. Board of Equalization,* 18 N.M. 531, 139 P. 159 (1914). Apparently, the County arbitrarily chose which parcels of land to reassess. It appears from the record that the only reason the County had not reassessed all county lands by late 1976, when the reappraisal program was cut back or halted, was simply that the County did not have the manpower and money to have had all the county property reassessed by then.

This Court reiterated the *Skinner* holding in 1979 in *Ernest W. Hahn, Inc. v. County Assessor, Etc.,* 92 N.M. 609, 592 P.2d 965 (1978). Although we realize that Appelman has been paying higher property taxes than other Bernalillo County property owners for a number of years, in *Hahn* we stated: "[t]emporary inequalities which result from the practicalities of carrying out a countywide systematic and definite property appraisal program are inevitable and constitutional. This rule is universally accepted." *Id.* at 612, 592 P.2d at 968. *See Hamilton v. Adkins,* 250 Ala. 557, 35 So.2d 183 (1948),

*cert. denied*, 335 U.S. 861, 69 S.Ct. 133, 93 L.Ed. 407 (1948); *Maricopa County v. North Central Dev. Co.*, 115 Ariz. 540, 566 P.2d 688 (Ct.App.1977); *Rogan v. County Commissioners of Calvert County*, 194 Md. 299, 71 A.2d 47 (Ct.App.1950); *Larson v. State*, 166 Mont. 449, 534 P.2d 854 (1975).

 Only when fraud or systematic discrimination are present, as was the case in *Hahn, supra,* does the inequitable taxation give rise to a constitutional claim. If there is no constitutional claim, a taxpayer's remedy is limited to having the assessing authority raise the valuation of other properties to the level of his own. *Skinner, supra; State v. San Luis Power & Water Co.*, 51 N.M. 294, 183 P.2d 605 (1947); *Oden Buick, Inc. v. Roehl*, 36 N.M. 293, 13 P.2d 1093 (1932). And if the revaluation program ceases or fails to continue, then, in the absence of fraud or intentional discrimination, the taxpayer is still limited to seeking a continuance of the revaluation program. *See Skinner* at 226, 345 P.2d at 753.

It appears that Appelman sought the improper remedy; she should have requested that the County be ordered to raise the valuation level of other property in the county to full market value.

It is unlawful and grossly inequitable for one set of taxpayers to pay on market value and others to be charged at a much lower rate, as is indicated in this record. It is common knowledge, of which we take judicial notice, that these flagrant inequities exist throughout the state. Public officials who are responsible for reappraisal programs mandated by the Legislature are to be condemned for permitting such manifest discrimination.

 The Property Tax Code, Sections 7–35–1 *et seq.,* N.M.S.A.1978, provides the scheme whereby these inequities can and should be avoided. It is the individual county assessors who are responsible for maintaining current and correct property valuations. §§ 7–36–2 and 7–36–16, N.M.S.A.1978. If a board of county commissioners has not allocated adequate funds for the county assessor to fulfill his responsibility, there is a remedy in mandamus. The New Mexico Department of Finance and Administration has considerable control over county budgets that could be employed. § 7–36–16(D).

Ultimately, the Director of the Property Tax Division of the Taxation and Revenue Department has general supervisory authority over county assessors. § 7–35–3, N.M.S.A.1978. If the Director finds a county assessor is not fulfilling his responsibilities, the Director has a statutory duty to notify the county assessor and his board of county commissioners of this fact, hold a hearing, and consider suspending the county assessor if the situation is not rectified, assuming the assessor's responsibilities and charging the costs to the particular county. § 7–35–6, N.M.S.A.1978.

These statutes are unambiguous. The Legislature obviously intended that they be enforced. Ours being a system of laws, they should be enforced unless and until the Legislature speaks further on the subject.

 Appelman also raises the issue of whether the trial court had the power to order the county to provide adequate funding and to order that the reappraisal program be promptly completed, when she had not requested this relief. As this Court recently stated: "New Mexico now clearly allows any appropriate relief to be granted in a case regardless of what is specifically requested in the pleadings." *State ex rel. Newsome v. Alarid*, 90 N.M. 790, 798–9, 568 P.2d 1236, 1244–5 (1977). We there stated that the filing of a complaint seeking relief of one sort is not an irrevocable election of remedies precluding the granting of relief of another kind. The trial court here had the power to award the relief it did.

We affirm.

IT IS SO ORDERED.

SOSA, C. J., and FEDERICI, J., concur.