**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

Opinion Number: 2012-NMCA-082

Filing Date: July 3, 2012

Docket No. 31,207

AMREP SOUTHWEST INC.,
a New Mexico corporation, and
OUTER RIM INVESTMENTS, INC.,
a New Mexico corporation,

      Protestants -Appellants,

v.

SANDOVAL COUNTY ASSESSOR,

      Respondent-Appellee.

**APPEAL FROM THE DISTRICT COURT OF SANDOVAL COUNTY**
**George P. Eichwald, District Judge**

Lastrapes, Spangler & Pacheco, PA
Matthew M. Spangler
Rio Rancho, NM

for Appellants

County of Sandoval
Natalia Sanchez Downey, Assistant County Attorney
Bernalillo, NM

for Appellee

## OPINION

**SUTIN, Judge.**

**{1}**    Appellant corporations protested the value of their property for taxation purposes for the 2009 tax year. At the protest hearing, in conformity with its longstanding interpretation of statutory and administrative codes, the Sandoval County Valuation Protests Board (the Board) refused to consider Appellants' comparable 2009 sales evidence. The Board relied

1

exclusively on comparable 2008 sales. The district court affirmed the Board's decision. This appeal followed. We too hold that the Board did not err.

**BACKGROUND**

**{2}** AMREP Southwest Inc. and its subsidiary, Outer Rim Investments, Inc., (AMREP) owned approximately 19,541 parcels of vacant property in Sandoval County, New Mexico. In March 2009, the Sandoval County Assessor delivered to AMREP notices of property value for taxation purposes for the 2009 tax year, with taxes due in two equal installments on November 10, 2009, and April 10, 2010. *See* NMSA 1978, § 7-38-38(A) (1987) (stating the tax payment due dates). AMREP protested the valuations, claiming that the assessed values of the properties were greater than their fair market values. *See* NMSA 1978, § 7-38-25(D) (1997) (stating that "[t]he county valuation protests board shall hear and decide protests of determinations made by county assessors").

**{3}** The protest hearing took place on August 31 through September 4, and on September 21, 2009, before the Board. AMREP presented two types of evidence in support of its proposed valuation figures: (1) certain characteristics of the properties, including topographical issues that affected the value of some of the vacant lots; and (2) an analysis of comparable sales that occurred in 2009. As to the first type of evidence, the Board was persuaded that a number of parcels had been overvalued, and the Board adjusted the assessor's valuation determinations accordingly. Those adjustments are not at issue in this appeal. At issue here is the Board's refusal to adjust valuations based on comparable 2009 sales.

**{4}** In regard to its refusal to consider AMREP's 2009 sales data to adjust the assessor's valuations, the Board explained that based upon its "consistent[]" and "longstanding interpretation" of relevant statutory and administrative code provisions, properties must be valued using only data available on January 1, 2009. The particular statutory and administrative code provisions cited by the Board included NMSA 1978, Section 7-36-15(B)(1) (2008). This section provides that

> the value of property for property taxation purposes shall be its market value as determined by application of the sales of comparable property . . . . In using any of the methods of valuation authorized by this subsection, the valuation authority:
>
> . . . shall apply generally accepted appraisal techniques[.]

NMSA 1978, Section 7-38-7 (1997) provides that "[a]ll property subject to valuation for property taxation purposes shall be valued as of January 1 of each tax year[.]" Additionally, Regulation 3.6.7.14(A) of the Administrative Code provides that the taxable status of property is fixed as of "January 1 of each year[.]" *See id.* (stating that "January 1 of each

2

year is the date which determines the tax status of all property subject to valuation for property taxation purposes").

**{5}**     The Board also noted "parallels contained in [Regulation 3.6.5.23(C)(2) of the Administrative Code], which generally establishes the data . . . to be used in determining the 'current and correct' value of [residential] property . . . . [and] requires the use of 'market value of the year prior to the current tax year' for property not recently purchased." The Board explained that "[t]his regulation recognizes that the best indicator of value on January 1 is the composite value for the prior year."

**{6}**     Thus, the Board did not rely on the data from 2009 sales offered by AMREP. The district court affirmed the Board's decision. On appeal to this Court, AMREP requests that we reverse the district court and remand the matter with instructions to vacate the Board's decision. AMREP asserts that the Board's interpretation of its governing statutes and administrative code provisions is contrary to law and that the Board acted arbitrarily and denied it due process because the Board failed to consider the comparable 2009 sales data.

## DISCUSSION

**{7}**     As did the district court, we review the whole record to determine whether the Board's decision was "arbitrary, capricious, or an abuse of discretion; not supported by substantial evidence in the record; or, otherwise not in accordance with law." *Rio Grande Chapter of Sierra Club v. N.M. Mining Comm'n*, 2003-NMSC-005, ¶ 17, 133 N.M. 97, 61 P.3d 806; *see* Rule 1-074(R) NMRA. Additionally, we review de novo the legal question of whether the Board misinterpreted and misapplied its statutory and administrative governing provisions. *See Lobato v. State Env't Dep't*, 2012-NMSC-002, ¶ 6, 267 P.3d 65. Likewise, we review de novo the constitutional question of whether AMREP was deprived of procedural due process. *Albuquerque Bernalillo Cnty. Water Util. Auth. v. N.M. Pub. Regulation Comm'n*, 2010-NMSC-013, ¶ 19, 148 N.M. 21, 229 P.3d 494.

**{8}**     AMREP's contentions of error derive from the premise that the New Mexico Property Tax Code, NMSA 1978, §§ 7-35-1 to -38-93 (1973, as amended through 2012), does not expressly require that the comparable sales used for property valuations can only consist of data known as of January 1 of the tax year. Thus, according to AMREP, the Board's "longstanding interpretation" of Section 7-38-7 and related administrative code provisions to mean that properties must be valued using only sales available on January 1 was contrary to law and was arbitrary. AMREP supports its position by arguing that "generally accepted appraisal techniques" required the use of relevant post-January 1 sales in making a valuation determination.

**{9}**     We are guided by three rules of statutory construction. *Smith v. Bernalillo Cnty.*, 2005-NMSC-012, ¶ 18, 137 N.M. 280, 110 P.3d 496. First, we look to the plain language of a statute as a primary indicator of legislative intent. *Id.* Second, provided that the agency has not misapplied or failed to abide by its governing provisions, we "give persuasive weight

3

to long-standing administrative constructions of statutes by the agency charged with administering them." *Id.* (internal quotation marks and citation omitted); *see State ex rel. Castillo Corp. v. N.M. State Tax Comm'n*, 79 N.M. 357, 360, 362, 443 P.2d 850, 853, 855 (1968) (stating that the appellate courts will not give persuasive weight to an agency's longstanding misapplication or misinterpretation of law). And third, so as to give effect to all relevant provisions, they are read together. *Smith*, 2005-NMSC-012, ¶ 18. The rules of statutory construction also apply to interpreting sections of the administrative code. *PC Carter Co. v. Miller*, 2011-NMCA-052, ¶ 11, 149 N.M. 660, 253 P.3d 950.

**{10}** Neither party argues that the applicable statutes or administrative code provisions are ambiguous. We therefore will not address any question of ambiguity. The parties simply interpret what they apparently believe is plain language, either, as the Board contends, unaffected by Section 7-36-15(B)(1) or, as AMREP contends, to be read together with that section. The Board interprets "as of January 1" to mean "available" as of January 1, allowing no consideration of tax-year sales in valuation analysis. AMREP interprets "as of January 1" to mean "accurate" as of January 1, allowing consideration of relevant tax-year sales. Contrary to AMREP's due process argument that the Board refused to receive the evidence of comparable 2009 sales, the Board received the evidence but gave it no weight whatsoever given the Board's restrictive view of Section 7-38-7.

**{11}** AMREP argues that the 2009 sales were obviously relevant on the question of property values as of January 1, 2009, and that use of relevant evidence of that value comported with the requirement that the assessor employ generally accepted appraisal techniques. AMREP's expert appraiser testified that with the major decline in the national economy that occurred in the third quarter of 2008, insufficient sales occurred leading up to January 1, 2009, from which AMREP could reasonably calculate the value estimates. This lack of adequate data from late 2008 resulted in their attempt to use 2009 sales to establish these values.

**{12 }** It is noteworthy that the Board appears to have been somewhat sympathetic with AMREP's arguments. As pointed out by AMREP, the Board stated:

> 38. [AMREP's] expert witness . . . assigned lower values than the [a]ssessor[] for each unit based on an analysis of comparable sales trends that included sales for the 2009 tax year. All parties seemed to recognize that 2007 or 2008 was a high water mark for values in Rio Rancho Estates, and that 2009 values are down significantly.

> 39. [AMREP's expert's] analysis would appear to comply, at least in part, with generally accepted appraisal techniques, as required by the applicable statute and regulation [to the extent that i]t is a generally accepted appraisal technique that recent comparable sales are preferable[.]

4

40. However[,] this is a case in which good appraisal practice seems to conflict with governing regulation.

(Footnote and citations omitted.) The Board nevertheless determined that it would hold fast with its consistent interpretation of Section 7-38-7 and the administrative code provisions "to mean that properties must be valued using only data available on January 1 of the tax year." The Board's primary rationales supporting its hold-fast position were:

43. Attempting to value property as of the date of hearing, whenever that may be, sets up a moving target that directly conflicts with the goals of consistency, certainty[,] and administrability contained in the Property Tax Code.

44. We also note parallels contained in [Regulation] 3.6.5.23(C), which generally establishes the data . . . to be used in determining the "current and correct" value of a property (although it contains an apparent oversight in not including non-residential properties that are assessed on a one-year appraisal cycle, as in this case). That regulation requires the use of "market value of the year prior to the current tax year" for property not recently purchased. This regulation recognizes that the best indicator of value on January 1 is the composite value for the prior year.

. . . .

46. [AMREP's expert] witness testified that the asserted values were not supportable on pre-2009 evidence alone, and we therefore find that [AMREP] has not overcome the presumption of correctness in favor of the [a]ssessor's valuation on this basis.

**{13}** AMREP asserts that "[t]his is not a case in which good appraisal practice conflicts with the [relevant statutory and administrative provisions] . . ., it is a case in which the Board has historically misinterpreted the plain language of [those provisions] and continues to perpetuate its misinterpretation." In AMREP's view, the Property Tax Code requires "only that the property's value is accurate *as of* January 1, 2009, by the use of generally accepted appraisal techniques." While AMREP's position tends to make sound valuation sense, we will not interpret Sections 7-36-15(B)(1) and 7-38-7 as requiring the Board to include valuation-relevant, post-January 1 comparable sales in its decision.

**{14}** The statutory and administrative code provisions at issue, read together so as to give effect to their meaning, support the Board's application of its "longstanding interpretation" of the provisions to the circumstances in this case. In addition to other relevant provisions noted by the Board, part of the valuation process requires the assessor to mail valuation notices to property owners by April 1 of each tax year. Section 7-38-20(A). The Legislature could reasonably have intended the valuation scheme to have consistency and to be efficient

and effective through a cut-off date for valuation data. By adhering to a January 1 evidentiary cut-off date, the assessor has a reliable, consistent, workable valuation process, pursuant to which there is time to prepare and mail valuation notices by April 1. This serves to reduce the burden on assessors to timely formulate valuations of thousands of properties for their required time-limited notices of value to be mailed for tax purposes by April 1 of each year. A cut-off date also eliminates the substantial amount of further valuation work that would be required in order to meet "moving targets" presented by protests based on later-developed evidence of comparable tax-year sales.

**{15}** Nothing in the law suggests that protests boards are required to consider comparable tax-year sales in determining whether to adjust the assessor's valuation. *In re Protest of Miller*, 88 N.M. 492, 496-97, 542 P.2d 1182, 1186-87 (Ct. App. 1975), *rev'd on other grounds*, 89 N.M. 547, 555 P.2d 142 (1976), cited by AMREP to support its argument that the Board acted arbitrarily and denied AMREP due process, is inapplicable. In *Miller*, this Court reversed the decisions of certain county protests boards because the boards had reached a decision without considering relevant evidence presented at the hearing, thereby rendering the decisions arbitrary. *Id.* at 494, 497, 542 P.2d at 1184, 1187. Unlike *Miller*, here the relevancy of the evidence is immaterial.

**{16}** Further, for tax law consistency, efficiency, and effectiveness, the Legislature could well have intended, as a policy matter, to preclude up-and-down value manipulation and regulation by adding comparable tax-year sales. With a January 1 evidentiary cut-off date, the assessor is able to reasonably anticipate the evidence that may be presented to rebut the presumption of correctness of the valuation, and the assessor is better equipped to defend the valuation. Nothing in the law suggests that assessors are to gather comparable tax-year sales data either for valuation notices or to defend protests.

**{17}** AMREP's view of the valuation scheme results in what would appear to be an unacceptable imbalance in the valuation process. In years in which relevant comparable tax-year sales show a significant increase in property value, once the assessor provides notice of value, the assessor presumably cannot adjust the valuation upward to reflect a higher value; whereas, in years in which relevant comparable tax-year sales show a significant decrease in value, those who protest may obtain a reduced tax-year valuation. We doubt that the Legislature intended this imparity in the enactment of the statutory property tax provisions or that the State Taxation and Revenue Department intended this in the adoption of the administrative code provisions relating to valuation of real property.

**{18}** In our view, the Board appropriately refused to consider AMREP's 2009 sales data. The refusal was based on a policy-driven purposeful cut-off date for sales data. If our view is mistaken, we assume the Legislature will correct it. We hold that the Board's interpretation of the statutory and administrative code provisions was reasonable and that, with respect to comparable sales, the Legislature intended assessors and protests boards to consider only the data available on January 1 of the tax year of the valuation notice. The

Board did not act contrary to law, it did not act arbitrarily, and it did not deny AMREP procedural due process.

**CONCLUSION**

**{19}** We affirm.

**{20}** **IT IS SO ORDERED.**

_____

**JONATHAN B. SUTIN, Judge**

**WE CONCUR:**

_____

**CELIA FOY CASTILLO, Chief Judge**

_____

**RODERICK T. KENNEDY, Judge**

**Topic Index for** _Amrep Southwest, Inc. v. Sandoval County Assessor_**, Docket No. 31,207**

**APPEAL AND ERROR**
Standard of Review

**GOVERNMENT**
Counties

**STATUTES**
Interpretation
Legislative Intent
Rules of Construction

**TAXATION**
Property Tax
Valuation