**Certiorari Granted, April 5, 2013, No. 34,039**

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**Opinion Number: 2013-MCA-050**

**Filing Date: February 1, 2013**

**Docket No. 32,021**

**CAVU CO., a Nebraska Corporation,**

      **Respondent-Appellant,**

**v.**

**DOMINGO MARTINEZ, Santa Fe County Assessor,**

      **Petitioner-Appellee.**

**APPEAL FROM THE DISTRICT COURT OF SANTA FE COUNTY**
**Raymond Z. Ortiz, District Judge**

Francis P. Matthews
Elkhorn, NE

Sommer, Udall, Sutin, Hardwick & Hyatt P.A.
Kurt A. Sommer
Santa Fe, NM

for Appellant

Bridget Jacober
Santa Fe, NM

for Appellee

**OPINION**

**Bustamante, Judge.**

**{1}** This case presents two issues. The first is whether a statute and regulation stating that an exemption from taxation is determined "as of January 1" requires the reviewing body to focus exclusively on use of the property on that day or permits examination of use prior

1

to that date. The district court determined that because CAVU Co.'s (Taxpayer) property was not in use on January 1, 2010, it was not eligible for exempt status for that year. Although the district court erred in its narrow interpretation of the applicable statutes and regulations, we nevertheless affirm its ruling that Taxpayer's property was not exempt for 2010.

**{2}** The second concerns the proper remedy under New Mexico's Constitutional provision requiring uniform taxation when similarly situated properties are disparately granted exemptions from taxation. The district court reversed the Santa Fe County Protest Board's (Protest Board) decision that Taxpayer was entitled to an exemption because another similarly used property was not taxed. We affirm the district court's conclusion that Taxpayer was not entitled to tax exempt status for 2010 based on non-uniform treatment.

**BACKGROUND**

**{3}** Taxpayer, a Nebraska corporation, owns the property at 7300 Old Santa Fe Trail in Santa Fe, New Mexico. The property was used as a school and determined to be exempt from property taxes through 2008.[1] Between May 2008 and August 2010, Taxpayer sought an educational tenant for the property, but the property was not in active use, except for a few months during which it was used by an organization that taught people to train dogs. In the fall of 2010, the property was again used as an educational institution. It is undisputed that on January 1, 2010, the property was not in active use for educational purposes. In 2010, the Santa Fe County Assessor (Assessor) determined that the property was no longer exempt from ad valorem taxes and valued the property at $6,689,750. Taxpayer protested this determination to the Protest Board.

**{4}** The Protest Board restored the exemption based on its conclusion that denial of an exemption to Taxpayer constituted "non-uniform" treatment in the assessment of taxes, contrary to Article XIII, Section 1 of the New Mexico Constitution. The Protest Board found that another property, the St. Francis School property, was not operating as a school on January 1, 2010, but was granted an exemption from taxation for that year. Finding that Taxpayer's property was "in a very similar situation, with no actual educational use on January 1[], but with active educational use starting in the fall semester[,]" the Protest Board determined that exemption of the two properties was non-uniform. It concluded that the proper remedy was to designate Taxpayer's property exempt as well.

**{5}** Although the Protest Board concluded that "it would appear that this case might present one of the rare instances in which temporary non[-]use actually constitutes an exempt use of property in the unique circumstances[,]" it did not decide the matter on that basis, stating, "[g]iven our dispositive ruling on [Taxpayer's] uniformity argument, we do not make

---

[1]The record is unclear as to the tax status of the property in 2009.

a formal decision on this basis." Assessor filed a petition for writ of certiorari with the district court. *See* Rule 1-075 NMRA ("Constitutional review by district court of administrative decisions and orders.").

**{6}** The district court reversed the Protest Board. It concluded that the Protest Board's decision was "not in accordance with law" because Taxpayer did not "demonstrate that the Assessor's failure to tax a similarly used property . . . was the result of fraud or intentional discrimination by the Assessor" and, therefore, "there is no constitutional basis to warrant the remedy of exempting [Taxpayer's] property from taxation." It found further that "[NMSA 1978,] Section 7-38-7 [(1997)] clearly provide[s] that January 1[] of each tax year is the point at which the status of property, in terms of qualifying for an exemption from taxation, is to be determined." Since the property was not being used as a school on January 1, 2010, the district court held that the property was not exempt for the 2010 tax year. Taxpayer appealed.

**DISCUSSION**

**{7}** Taxpayer makes five points which we consolidate into two major arguments. First, it argues that the district court's interpretation of Section 7-38-7 was contrary to Article VIII, Section 3 of the New Mexico Constitution, principles of statutory construction, and case law. Next, it argues that the district court erred in finding that there was no constitutional basis on which to determine that the property is exempt. We address these arguments in turn.

**A.     The District Court Erred in Interpreting Section 7-38-7 Too Narrowly**

**{8}** Section 7-38-7 reads, in relevant part, "All property subject to valuation for property taxation purposes shall be valued as of January 1 of each tax year[.]" In addition, 3.6.7.14 NMAC (4/30/2001) states:

> A.     TAXABLE STATUS OF PROPERTY FIXED AS OF JANUARY 1 OF EACH YEAR: January 1 of each year is the date which determines the tax status of all property subject to valuation for property taxation purposes . . . . This status includes determination of whether the property is exempt from property taxation. Therefore, if property is not entitled to exemption from property taxation under the Property Tax Code [NMSA 1978, Sections 7-35-1 to -38-93 (1973, as amended through 2012)] on January 1 of the tax year, it is not exempted from taxation for that tax year. The sale or transfer of the property to a tax exempt owner at a later date during the tax year does not entitle the property to exemption for that tax year.

**{9}** Taxpayer argues that the district court's reliance on the use of the property on a single day—January 1—was a "gross misinterpretation" of the statute and that "January 1[] is the *determination* date of the property's tax status; it is *not* the classification date." Taxpayer argues further that the question of whether the property was used for educational

purposes "is to be decided on the basis of what educational use took place *before* the date of January 1." Finally, Taxpayer maintains that the district court's focus on the use of the property on a single day was contrary to Article VIII, Section 3 of the New Mexico Constitution, which provides that "all property used for educational or charitable purposes . . . shall be exempt from taxation." We agree that the district court erred in focusing only on a single day in its determination of classification of the property.

**{10}** As a preliminary matter, we note again that the Protest Board did not decide the issue of whether the property qualified for an exemption on the basis of its use for educational purposes. Thus, there was no final order on this basis from which Assessor could seek redress. Rather, Assessor argued in its statement of issues that the Protest Board "act[ed] arbitrarily, capriciously[,] and not in accordance with law[] [when it] did not enter an order denying the protest and finding the property taxable" in spite of its finding that the property was not actively used for educational purposes on January 1, 2010. The district court apparently agreed that the Protest Board erred by not denying the exemption based on this finding of fact.

**{11}** We "review a district court's decision in an administrative appeal under an administrative standard of review." *Gallup Westside Dev., LLC v. City of Gallup*, 2004-NMCA-010, ¶ 10, 135 N.M. 30, 84 P.3d 78. In a case such as this one, where the district court reversed the Protest Board on one basis and ruled in favor of Assessor on a different, independent basis, "[w]e conduct the same review of an administrative order as the district court sitting in its appellate capacity, while at the same time determining whether the district court erred in the first appeal." *Id.* (internal quotation marks and citation omitted). The district court may reverse the Protest Board if it acted "outside the scope of authority of the agency[,]" Rule 1-075(R)(3), or if "[the district court] determines that the administrative entity . . . acted fraudulently, arbitrarily, or capriciously; if the decision was not supported by substantial evidence in the whole record; or if the [Protest Board] did not act in accordance with the law." *Gallup Westside Dev., LLC*, 2004-NMCA-010, ¶ 10; *see* NMSA 1978, § 39-3-1.1(D) (1999). Interpretation of a statute is a question of law which an appellate court reviews de novo. *See Morgan Keegan Mortg. Co. v. Candelaria*, 1998-NMCA-008, ¶ 5, 124 N.M. 405, 951 P.2d 1066.

**{12}** "Property is presumed to be subject to taxation." *Georgia O'Keefe Museum v. Cnty. of Santa Fe*, 2003-NMCA-003, ¶ 32, 133 N.M. 297, 62 P.3d 754; 3.6.7.16(A) NMAC (4/30/2001). Article VIII, Section 3 of the New Mexico Constitution, however, provides that "all property used for educational or charitable purposes . . . shall be exempt from taxation." Unlike several other exemptions in Article VIII, Section 3, which are based on the ownership of the property or whether the property is used for commercial or profit-generating purposes, the exemption at issue in this case hinges on whether the property is "used for" educational purposes. *Albuquerque Lodge, No. 461, B. P. O. E., v. Tierney*, 39 N.M. 135, 142, 42 P.2d 206, 211 (1935) ("It is the use of property, not the declared objects and purposes of its owner, which determines the right to exemption."). The taxpayer bears the burden of proof regarding an exemption. *Georgia O'Keefe Museum*, 2003-NMCA-003, ¶ 32.

4

**{13}** The issue before us is whether the property was "used for" educational purposes at the times relevant to determination of its tax status for 2010. Assessor does not dispute the Protest Board's findings of fact that the property was used by a school until May 2008, that the property was used by an organization that taught people to train dogs between February and May 2010, and that educational use resumed again in August 2010. Nor does Assessor appear to challenge Taxpayer's assertion that the property has never been used for purposes other than educational. Rather, Assessor urges us to affirm the district court's decision based on the fact that the property was not in active use for educational purposes on January 1, 2010. Taxpayer argues that this approach is unreasonable because it fails to consider use of the property prior to that date. We agree with Taxpayer.

**{14}** Before reaching the merits, we dispose of Assessor's somewhat oblique assertion that the district court did not rely on the use of the property on January 1 alone. The district court's order states:

> On January 1, 2010 [Taxpayer's] property while previously used for a school and developed for a school was not in use as a school *on that date*;
>
> . . . *Therefore*, [Taxpayer's] property did not qualify on [sic] for an exemption from taxation based on educational use even though the property was later used as a school during the calendar year[.]

(Emphasis added.) In addition, at the hearing, Assessor argued that Section 7-38-7 requires that "a property must be in use as an educational facility on January 1 of the year in order to qualify for an exemption from taxation." In an oral ruling, the district court agreed, stating:

> In my view, Section 7-38-7 clearly speaks in terms of January [1] being the status date for valuation purposes. And on January 1 of the year in question, the old school had vacated the property and the school was not then being currently and actively used as an educational facility.

We conclude from this record that the district court's decision rested on the use of the property on January 1 without consideration of its use prior to that date.

**{15}** Turning now to the merits, we conclude that the district court erred in focusing on January 1 because such a narrow interpretation of Section 7-38-7 is contrary to Article VIII, Section 3 of the New Mexico Constitution, is not required by the language of the Property Tax Code, and is inconsistent with case law. The educational use exemption is constitutional in origin. N.M. Const. art. VIII, § 3; *Temple Lodge No. 6, A. F. & A. M., v. Tierney*, 37 N.M. 178, 185, 20 P.2d 280, 283 (1933) ("[The exemption] invests citizens with constitutional rights, which administrative officers or Legislature may not impair, and which courts must protect."). When this is the case, "[t]he rule in New Mexico is that of reasonable construction, without favor or prejudice to either the taxpayer or the State, to the end that the

5

probable intent of [Article VIII, Section 3] is effectuated and the public interests to be subserved thereby are furthered." *Benevolent & Protective Order of Elks, Lodge No. 461 v. N.M. Prop. Appraisal Dep't (BPOE, Lodge No. 461)*, 83 N.M. 445, 447, 493 P.2d 411, 413 (1972). The purpose of the exemption "is to encourage private citizens to engage in educational pursuits from which the public derives a substantial benefit." *Georgia O'Keefe Museum*, 2003-NMCA-003, ¶ 46. When interpreting Article VIII, Section 3 of the New Mexico Constitution and relevant statutes, our task is to avoid "fritter[ing] away [the exemption] by a construction so strict as to be unreasonable or harsh . . . [while also] not . . . enlarg[ing the exemption so] as to create rights which the Constitution makers did not contemplate." *Georgia O'Keefe Museum*, 2003-NMCA-003, ¶ 44 (internal quotation marks and citation omitted).

**{16}** Applying the district court's narrow construction of Section 7-38-7 and Regulation 3.6.7.14 of the Administrative Code has the potential to "fritter away" the educational use exemption granted in our Constitution because it could undermine substantially a property owner's ability to demonstrate educational use. *Cf. George O'Keefe Museum*, 2003-NMCA-003, ¶ 47. The district court's interpretation does not take into consideration the real possibilities for temporary vacancies or breaks in use that have little impact on beneficial services provided to the public. *Cf. Grand Lodge of Ancient & Accepted Masons of N.M. v. Taxation & Revenue Dep't*, 106 N.M. 179, 181, 740 P.2d 1163, 1166 (Ct. App. 1987) (stating that educational use need not be the exclusive use of the property for the exemption to apply). For instance, many, if not most, schools are not in "active use" on January 1, a national holiday. In addition, a property could be actively used for educational purposes by one tenant with a temporary break in that activity before another tenant takes occupancy. We can envision other like scenarios in which a property not in active use on a given day still provides services of "substantial public benefit" sufficient to satisfy the educational use exemption. *See NRA Special Contribution Fund v. Bd. of Cnty. Comm'rs*, 92 N.M. 541, 547-48, 591 P.2d 672, 678-79 (Ct. App. 1978) ("If a portion of plaintiff's land is primarily and substantially devoted to educational purposes, notwithstanding that the period of its instruction is very short, . . . it is educational within the scope of the term as employed in [Article VIII, Section 3 of the New Mexico Constitution]." (internal quotation marks and citation omitted)).

**{17}** In addition, Section 7-38-7 itself, analyzed in the context of the rest of the Property Tax Code and accompanying regulations, does not require this narrow focus. *Quantum Corp. v. Taxation & Revenue Dep't*, 1998-NMCA-050, ¶ 8, 125 N.M. 49, 956 P.2d 848 ("[T]he statutes in question must be read in connection with other statutes concerning the same subject matter[.]"). Section 7-38-7 states that "[a]ll property . . . shall be valued as of January 1 of each tax year[.]" In the context of valuations, it is obvious that Assessor and/or Protest Board are not limited by this language to focusing on a single day in valuing a property because other relevant statutes and regulations require use of comparable sales data in a specific prior period to determine market value. *See* § 7-36-15(B) (stating that "the value of property for property taxation purposes shall be its market value as determined by application of the sales of comparable property, income or cost methods of valuation or any

combination of these methods"); *AMREP Sw. Inc. v. Sandoval Cnty. Assessor*, 2012-NMCA-082, ¶¶ 12, 18, 284 P.3d 1118 (holding that the Protest Board was not required to include *post*-January 1 data in its valuation of a property and affirming the Protest Board's "consistent interpretation of Section 7-38-7 and the administrative code provisions 'to mean that properties must be valued using only data *available on* January 1 of the tax year.' ") (emphasis added); 3.6.5.23(C) NMAC (6/13/2003) (stating that "[t]he phrase 'current and correct values of property' . . . means . . . market value" based on specified years). Read in this context, "as of January 1" defines not a limitation on what evidence can be considered, but rather a "cut-off date" for determination of the valuation of a property. *AMREP Sw. Inc.*, 2012-NMCA-082, ¶ 14; *see* 3.6.7.14(A), (B) NMAC. This "cut-off date . . . eliminates the substantial amount of further valuation work that would be required in order to meet 'moving targets' presented by protests based on later-developed evidence of comparable tax-year sales." *AMREP Sw. Inc.*, 2012-NMCA-082, ¶ 14.

**{18}**     Similarly, the statutes and regulations applicable to exemptions do not limit claimants' evidence of educational use to the property's use on January 1. *See, e.g.*, § 7-38-8.1 (requiring the tax division to "adopt regulations to insure that all real property . . . claimed to be exempt from property taxation . . . shall be reported"); § 7-38-17(E) (stating that claimants must file "proof of eligibility" but not specifying what evidence is required); 3.6.7.16 NMAC. Subsection C of Regulation 3.6.7.16 of the Administrative Code specifies the information that must be submitted in order to claim an educational use exemption, including "a description of the owner's activities or tax status for federal purposes if relevant to the claim for exemption" and "evidence to support the claim and . . . evidence that [educational] use is the primary and substantial use of the property." (internal quotation marks omitted). Nowhere in that regulation is the claimant required to provide evidence of use on a certain date or prohibited from providing evidence of use of the property in the past. Only Regulation 3.6.7.14 of the Administrative Code specifies that "if property is not entitled to exemption from property taxation . . . on January 1 of the tax year, it is not exempted . . . for that tax year." We conclude that it is consistent with the purposes of Article VIII, Section 3 of the New Mexico Constitution and the remainder of the Property Tax Code to construe this language as setting a cut-off date to avoid re-classification of properties throughout the tax year as in *AMREP Sw. Inc.*, rather than specifying a date on which the property's use defines its status for the remainder of the year.

**{19}**     Our conclusion is also consistent with cases addressing educational and charitable use. Both parties cite to *NRA* and *Georgia O'Keefe Museum* in support of their positions. In *NRA* and *Georgia O'Keefe Museum*, this Court examined the boundaries of "educational use" and defined it as "the direct, immediate, primary and substantial use of property that embraces systematic instruction in any and all branches of learning from which a substantial public benefit is derived." *NRA*, 92 N.M. at 548, 591 P.2d at 679 (internal quotation marks omitted). The parties accept this definition. Other New Mexico cases cited by the parties included *Sisters of Charity of Cincinnati, Ohio v. Bernalillo County*, 93 N.M. 42, 45, 596 P.2d 255, 258  (1979), *BPOE, Lodge No. 461*, 83 N.M. at 446-47, 493 P.2d at 412-13, and *Grace, Inc. v. Board of County Commissioners, Bernalillo County*, 97 N.M. 260, 261, 639

7

P.2d 69, 70 (Ct. App. 1981). These cases addressed the requirements for "charitable use" under Article VIII, Section 3 of the New Mexico Constitution. *Cf. Pecos River v. Cnty. of San Miguel*, 2013-NMCA-029, ___ P.3d ___ (discussing the requirement of "charitable use" under Article VIII, Section 3 of the New Mexico Constitution, and concluding that protection of natural habitat through seasonal maintenance qualifies the property for exemption from taxation). None of these cases addressed the specific issue here: whether property must be in active use for exempt purposes on January 1 in order for an exemption to apply. But we can infer the opposite based on the facts relied on in these cases. For example, in *NRA*, the National Rifle Association sought a refund of taxes paid on the ground that it qualified for an educational use exemption. 92 N.M. at 543, 591 P.2d at 674. The Supreme Court set forth the district court's findings with regard to the *NRA*'s activities during both the contested tax year and the year before. *Id.* at 544-45, 591 P.2d at 675-76. In *Georgia O'Keefe Museum*, the protest board heard testimony about the Museum's activities during the two years before the contested tax year. 2003-NMCA-003, ¶ 5; *see Sisters of Charity*, 93 N.M. at 44, 596 P.2d at 257 (discussing history of use of the property without reference to a specific date or year); *BPOE, Lodge No. 461*, 83 N.M. at 446, 493 P.2d at 412 (relying on the facts recited in this Court's opinion, *Benevolent & Protective Order of Elks, Lodge No. 461 v. N.M. Prop. Appraisal Dep't*, 83 N.M. 505, 507, 494 P.2d 167, 169 (Ct. App. 1971) *aff'd, BPOE, Lodge No. 461*, 83 N.M. at 447, 493 P.2d at 413, which addressed the lodge's activities throughout the tax year).

**{20}** Assessor does not argue that the district court was following a "long-standing administrative construction[] of [the] statute[] by the agency charged with administering [it]" to which we should "give persuasive weight." *AMREP Sw. Inc.*, 2012-NMCA-082, ¶ 9 (internal quotation marks and citation omitted). Nor does Assessor direct us to New Mexico cases that support the district court's approach. Assessor does cite *Dillard v. New Mexico State Tax Commission*, 53 N.M. 12, 201 P.2d 345 (1948), for the proposition that "a property's status on January 1 is determinative of whether it is entitled to an exemption for that year." In that case, the Court considered whether a soldier discharged after January 1 of the tax year was entitled to a veteran's exemption for that year. *Id.* at 24, 201 P.2d at 353; *see* N.M. Const. art. VIII, § 5. *Dillard* is distinguishable from this case in several ways. First, the Court's holding—that "[i]f the owner of property is not an honorably discharged soldier on January [1] of any year, then he is not entitled to . . . exemption for that year"—was based on NMSA 1941, Section 76-203 (1933), which contains language not found in the current Property Tax Code. *Dillard*, 53 N.M. at 23-24, 201 P.2d at 353. Second, unlike a fact-dependent analysis of whether a property is used "primar[ily] and substantial[ly]" for educational purposes to provide a "substantial" public benefit, *NRA*, 92 N.M. at 547-48, 591 P.2d at 678-79, whether a soldier was honorably discharged as of a certain date is a binary question. Thus, we find *Dillard* to be distinguishable from the circumstance herein.

**{21}** Neither are we convinced by the out-of-state cases cited by Assessor because both the facts and the statutes at issue there are unlike those here.

**B.      Taxpayer's Property Did Not Qualify for the Educational Use Exemption**

**{22}**      In spite of the district court's overly narrow interpretation of Section 7-38-7, we affirm the district court's decision because Taxpayer's educational use of the property was not "primary and substantial" for at least twelve months before January 1, 2010.[2] *See NRA*, 92 N.M. at 548, 591 P.2d at 679; *see also Moffat v. Branch*, 2002-NMCA-067, ¶ 13, 132 N.M. 412, 49 P.3d 673 ("[W]e will affirm the district court if it is right for any reason and if affirmance is not unfair to the appellant.").

**{23}**      "An exemption dependent on the use of property is solely a question of fact." *Grand Lodge*, 106 N.M. at 181, 740 P.2d at 1166.  An exempt "property need not be used exclusively for charitable or educational purposes, but those must be the primary or substantial uses. . . .  In addition, it is the actual use of the property, not the owner's declared objects and purposes, that determines the right to an exemption." *Id*.  The Protest Board found that the property's design made it "most suited" for a school and that there was "no dispute that . . . use [of the property through May 2008] was a bona fide educational use entitling the owner to a full exemption."  It concluded that beginning in August 2010, the property was again used for a "bona fide educational use."  It also made the following findings:

> [Finding] 21.   There is also no significant dispute that the property ceased being used actively as a school in May, 2008 and was not used actively as a full-time elementary school again until August, 2010.
>
>         . . . .
>
> [Finding] 23.   More to the point, [Taxpayer] actively sought an educational tenant for the subject property during the interim, including protracted negotiation with Desert Academy, which proved fruitless.
>
>         . . . .
>
> [Finding] 27.   There is evidence that during this time [Taxpayer] was actively seeking a school tenant and, in fact, was negotiating with one or more potential tenants.  Moreover, there is evidence of the owner's commitment to an educational use of the subject property in the form of nominal or significantly

---

[2]Since taxes are assessed annually, Section 7-38-7, we presume that the basis of tax status for the 2009 tax year was use of the property during 2008.  The focus of our analysis for tax status in 2010, therefore, is on use of the property during 2009.

> reduced rents for such use.

> . . . .

> [Finding] 30.   The subject property was not put to active educational use as
>                 of January 1. . . .

**{24}**   Our case law makes clear that the only relevant facts are those pertaining to the use of the property—not whether the property is built for a certain purpose, the owner's intent for the property, or the owner's support of educational or charitable causes through reduced rent. *Grand Lodge*, 106 N.M. at 181, 740 P.2d at 1166.   Thus, findings 23 and 27, as well as the Protest Board's observations about the suitability of the property for a school, are of limited or no relevance to the question before us. *See Grace, Inc.*, 97 N.M. at 260-61, 639 P.2d at 69-70 (holding that property purchased by a church for a new building was taxable in spite of the church's intent to build a new facility on it); *Georgia O'Keefe Museum*, 2003-NMCA-003, ¶ 40 (stating that the educational use exemption does not distinguish between organizations that make a profit and those that do not).   The focus on actual use derives from the basic principle on which the educational use exemption is based: "The rationale for this [exemption] provision is that all property should bear its share of the cost of government. Property which is exempt from taxation does not share in the burden.   Therefore, in exchange for its exempt status, such property must confer a substitute substantial benefit on the public." *NRA*, 92 N.M. at 548, 591 P.2d at 679; *see* 71 Am. Jur. 2d *State and Local Taxation* § 269 (2012).   Only property in actual use can provide a "substitute substantial benefit." *NRA*, 92 N.M. at 548, 551, 591 P.2d at 578, 682 ("Article VIII, [Section] 3 must be construed to free from taxation only property that is presently and actually in substantial use for educational purposes.").   Here, the property was not in actual use to benefit the public for all of 2009.   We recognize that Taxpayer sought to negotiate with educational tenants during this period.   Nevertheless, because such negotiations reflect intent for future use of the property rather than "present and actual" use, we conclude that the property did not qualify for an educational use exemption in 2010.

## C.   There Is no Constitutional Basis on Which Taxpayer Is Entitled to an Exemption

**{25}**   Taxpayer next argues that "[t]he district court erred in rejecting the Protest Board's determination that the [p]roperty should be rendered exempt under [the] New Mexico Constitution[,] [A]rticle VIII, [S]ection 1, which requires that similarly situated property be uniformly treated."   Taxpayer disputes the district court's determination that, absent a showing of "fraud or intentional discrimination by . . . Assessor[,]" there was "no constitutional basis to warrant the remedy of exempting [Taxpayer's] property from taxation."   "We interpret the Constitution and determine whether the law was properly applied to the facts through de novo review." *Georgia O'Keefe Museum*, 2003-NMCA-003, ¶ 27.

10

**{26}** Our analysis encompasses three distinct questions. First, was there a disparity in taxation of two similarly situated properties? Second, was the disparity constitutional in nature? Finally, what is the proper remedy?

**{27}** The Protest Board made the following findings:

> [Finding] 34.  . . . .
>
>     a.    The St. Francis School, owned by the Archdiocese of Santa Fe, was not operating as a school on January 1, 2010.
>
>     b.    School operations at the site, as the New Mexico School for the Arts, began for the fall semester of 2010.
>
>     c.    The school was in fact leased to a real estate developer for potential redevelopment during at least part of 2010.
>
>     d.    The tax rolls for the property containing the school reflected no valuation for improvements for 2010 (a portion of the lot was leased to the City of Santa Fe for parking during this time, and it may be only that portion which carried a land valuation).
>
>     e.    The school building was thus exempt from taxation for the 2010 tax year, as it was not placed on the tax rolls.
>
> [Finding] 35.  [Taxpayer's] property is in a very similar situation, with no actual educational use on January [1], but with active educational use starting in the fall semester.
>
>     . . . .
>
> [Finding] 41.  Thus, if [Taxpayer's] property and the [St. Francis] School property were treated differently, but were otherwise in factually similar positions, that disparate treatment would constitute lack of uniformity.
>
> [Finding] 42.  The Board does find such non-uniform treatment.

The parties dispute whether and to what extent the St. Francis School property was exempted from taxation. Assessor also argues that the Protest Board's findings were not supported by substantial evidence. We need not resolve this issue, however, because even if we assume there was a disparity, we determine that Taxpayer was not entitled to exempt status on that basis.

**{28}** The second question is whether a disparity in taxation is a violation of the New Mexico Constitution's requirement of uniform taxation. N.M. Const. art. VIII, § 1. Disparity in taxation by itself is not unconstitutional. In *Ernest W. Hahn, Inc. v. County Assessor for Bernalillo County*, the Court held that "[t]emporary inequalities which result from the practicalities of carrying out a county-wide systematic and definite property appraisal program are inevitable and constitutional." 92 N.M. 609, 612, 592 P.2d 965, 968 (1978). It is "[o]nly when fraud or systematic discrimination are present, . . . [that] the inequitable taxation give[s] rise to a constitutional claim." *Appelman v. Beach*, 94 N.M. 237, 240, 608 P.2d 1119, 1122 (1980). Taxpayer seeks to distinguish *Hahn* and *Appelman* by arguing that it is unnecessary to demonstrate fraud or systematic discrimination in an exemption situation because exemption, unlike valuation, "is determined by external facts easily discernible and not by a subjective judgment call." For reasons we discuss more fully below, we disagree that *Hahn* and *Appelman* are not applicable here. Taxpayer has not demonstrated that Assessor's disparate treatment of the two properties was the result of fraud or systematic discrimination; in fact, Taxpayer does not even assert that this is the case. Any disparity, therefore, does not rise to a constitutional violation. We affirm the district court's conclusion to this effect.

**{29}** Finally, we affirm the district court's rejection of Taxpayer's requested remedy. When there is a violation of the constitutional uniformity requirement, "[t]axpayers are entitled to a reduction in their assessment for the [relevant] tax year to a level which will achieve the practical uniformity required by Article VIII, Section 1 . . . of the New Mexico Constitution." *Hahn*, 92 N.M. at 614, 592 P.2d at 970. In contrast, "[i]f there is no constitutional claim, a taxpayer's remedy is limited to having the assessing authority raise the valuation of other properties to the level of his own." *Appelman*, 94 N.M. at 240, 608 P.2d at 1122. *Appelman* and *Hahn* are the progeny of *Skinner v. New Mexico State Tax Commission*, which addressed as a matter of first impression the question of "whether a tax equalization program in a county, commenced but not completed in a single year, violates the New Mexico constitutional provision requiring equal and uniform taxes." 66 N.M. 221, 222, 345 P.2d 750, 751 (1959). The Protest Board concluded that *Skinner*, *Hahn*, and *Appelman* are distinguishable on their facts. We conclude to the contrary that they are controlling here.

**{30}** Both Taxpayer and the Protest Board seek to distinguish *Skinner*, *Hahn*, and *Appelman* on the ground that they pertain to valuations only. The Protest Board found that *Skinner* was not "helpful" because, unlike valuations which are "susceptible to shades of estimation or inexactitude[,]" classification of property as exempt is "a binary inquiry." Taxpayer makes a similar argument on appeal. We do not agree that classification of a property as tax exempt based on educational use is materially different from valuation of property. An educational use exemption is granted when the use of the property is "primar[ily] and substantial[ly]" used for educational purposes that provide a "substantial public benefit." *NRA*, 92 N.M. at 548, 591 P.2d at 679 (internal quotation marks omitted). The test for educational use thus requires a subjective assessment of the property's use and its benefit to the public.

12

**{31}** In addition, the *Skinner*, *Hahn*, and *Appelman* holdings did not hinge on reasonable variation in values based on assessments of market value. Instead, they revolved around the *timing* of appraisals. In each case, the county conducted reappraisals of the protestants' properties but not on other properties in the county, which resulted in higher valuations of, and higher taxes on, the protestants' properties than on those of their neighbors. *Appelman*, 94 N.M. at 238-39, 608 P.2d at 1120-21; *Hahn*, 92 N.M. at 610-11, 592 P.2d at 966-67; *Skinner*, 66 N.M. at 222-23, 345 P.2d at 751. The focus of the Court's inquiry in those cases was the county's reappraisal program and whether it was based on a "systematic and definite plan for the reappraisal of all lands in [the c]ounty." *Hahn*, 92 N.M. at 613, 592 P.2d at 969. Thus, the question was whether the county was *administering* the reappraisal program in a discriminatory, non-uniform manner, not whether the reappraisal values or valuation methods were infirm. *Appelman*, 94 N.M. at 238, 608 N.M. at 1120 (stating that the taxpayer sought "to have her property tax valuation reduced to the level of other county non-reassessed property"); *Hahn*, 92 N.M. at 612, 592 P.2d at 968 (stating that "singling out one or a few taxpayers for reappraisals for several years in succession while virtually all other owners of comparable properties do not undergo a single reappraisal in the same period is an inequality that is neither temporary nor constitutional"); *Skinner*, 66 N.M. at 223, 345 P.2d at 751 (stating that the protestants "do not seriously protest their valuations nor claim that they are higher than the law allows, but . . . say that their assessments cannot be raised unless and until all other property in the county is similarly treated"). Only in *Hahn*, where certain properties were reappraised repeatedly while others were not reappraised at all, did the Court determine that the conduct of the reappraisal program and resulting inequity in taxation was unconstitutional. 92 N.M. at 612, 592 P.2d at 968. We conclude that *Skinner* and its progeny are not distinguishable on these grounds.

**{32}** Since here we have determined that there was no fraud or systematic discrimination by Assessor, the only remedy for any disparity is to remove the exemption from properties to which it was erroneously granted, rather than to exempt Taxpayer's property from taxes. Taxpayer did not request this remedy, arguing instead that the St. Francis School property was correctly granted an exemption and that Taxpayer's property should be similarly treated. *See Appelman*, 94 N.M. at 240, 608 P.2d at 1122 (stating that the taxpayer "sought the improper remedy; she should have requested that the [c]ounty be ordered to raise the valuation level of other property in the county to full market value"). The district court did not err in its conclusion that Taxpayer was not entitled to an exemption on the basis of non-uniform exemptions.

**CONCLUSION**

**{33}** Taxpayer is not entitled to an exemption from taxation in 2010 based on educational use of the property because the property was not in use for any eligible purposes for the entire previous tax year. Although the district court erred in focusing too narrowly on the use of the property on January 1, we nevertheless affirm its ruling to this effect. In addition, we agree with the district court's reasoning and conclusion that Taxpayer is not entitled to exemption from taxation based on non-uniform treatment of a similarly used property.

**{34}   IT IS SO ORDERED.**

_____

**MICHAEL D. BUSTAMANTE, Judge**

**WE CONCUR:**

_____

**LINDA M. VANZI, Judge**

_____

**J. MILES HANISEE, Judge**

**Topic Index for** *CAVU Co. v. Martinez***, No. 32,021**

**ADMINISTRATIVE LAW AND PROCEDURE**
Administrative Appeal
Standard of Review
Sufficiency of Evidence

**APPEAL AND ERROR**
Standard of Review
Substantial or Sufficient Evidence

**CONSTITUTIONAL LAW**
New Mexico Constitution, General

**TAXATION**
Exemptions
Property Tax

**STATUTES**
Interpretation
Legislative Intent