# IN THE SUPREME COURT OF THE STATE OF NEW MEXICO

**Opinion Number:** _____

**Filing Date:  August 17, 2017**

**NO. S-1-SC-35148**

**EL CASTILLO RETIREMENT RESIDENCES,**

Petitioner-Respondent,

v.

**DOMINGO MARTINEZ, ASSESSOR, SANTA FE COUNTY,**

Respondent-Petitioner.

**ORIGINAL PROCEEDING ON CERTIORARI**
**Barbara J. Vigil, District Judge**

Bridget Jacober
Santa Fe, NM

for Petitioner

Jones, Snead, Wertheim & Clifford, P.A.
Carol A. Clifford
Jerry Todd Wertheim
Santa Fe, NM

for Respondent

Betzer, Roybal & Eisenberg, P.C.
Gary D. Eisenberg
Albuquerque, NM

for Amicus Curiae
New Mexico Health Care Association

**OPINION**

**DANIELS, Justice.**

{1}     Article VIII, Section 1(A) of the New Mexico Constitution sets forth a general mandate that all property of the same class must be taxed in an "equal and uniform" manner, while Section 3 exempts from taxation property that is, among other exempt categories, "used for . . . charitable purposes." In 2008, the New Mexico Legislature created a new tax exemption for a continuing care community defined under the Continuing Care Act, NMSA 1978, §§ 24-17-1 to -18 (1985, as amended through 2010), that "donates or renders gratuitously a portion of its services or facilities" and "uses all funds remaining after payment of its . . . expenses of operation . . . to further its charitable purpose, including the maintenance, improvement or expansion of its facilities," among other qualifications. NMSA 1978, § 7-36-7(B)(1)(d) (2008); *see* § 24-17-3(B)-(C) (defining "community" and "continuing care").

{2}     Respondent El Castillo Retirement Residences is a self-sustaining retirement and continuing care community, funded entirely by admission and monthly fees paid by residents who have met El Castillo's requirements for sufficient financial resources, including a minimum net worth, and have satisfied specific health criteria. It does not accept residents who are Medicare-dependent, Medicaid-dependent, or charity-dependent or any residents who cannot afford to buy their way into the

community. It neither donates any significant services or property to charitable causes nor uses its property primarily and substantially for a charitable purpose. While we agree with the Court of Appeals that El Castillo does not use its property for charitable purposes and is therefore not exempt from the constitutional requirement of equal taxation, we write to clarify that Section 7-36-7(B)(1)(d) must be read in harmony with controlling constitutional requirements. Accordingly, we hold that El Castillo is not entitled to property-tax exemptions under either Section 7-36-7(B)(1)(d) or Article VIII, Section 3 of the New Mexico Constitution because El Castillo does not use its property primarily for substantial public benefit furthering charitable purposes.

**I.      BACKGROUND**

{3}      El Castillo Retirement Residences, located in Santa Fe County, provides graduated levels of care to its accepted residents, all of whom must pay an entry fee upon admission and monthly fees thereafter in return for living quarters, the use of shared facilities, access to coordinated social and recreational activities, and the assurance that El Castillo will provide any level of care that accepted residents may need as they age.

{4}      El Castillo is funded primarily by resident fees calculated at the time of

admission and based on each resident's life expectancy and projected level of required care. Fees are calculated to cover all of the operating costs of the facility and to provide additional reserves that can be drawn on to make up deficits. It is possible that particular residents will outlive their predicted life spans or require more expensive medical care than anticipated so that the fees they pay would not be enough to cover the entire cost of their lifetime care. Other residents may live fewer years than expected, and the entry fee and monthly fees they pay to El Castillo will exceed the total cost of their lifetime care.

{5} To minimize the facility's exposure to financial risk from this flat-fee arrangement, prospective residents must meet physical, mental, and financial requirements to be accepted for admission. El Castillo does not accept applicants who depend solely on Medicare or Medicaid, individuals whose net worth is less than $300,000 independent of social security benefits, or those whose health issues likely will require a high level of care.

{6} El Castillo's property was valued at $9,860,000 for 2009 property-tax purposes by the petitioner, the Santa Fe County Assessor. After receiving the notice of valuation, El Castillo filed a claim for exemption of property used for charitable purposes under Article VIII, Section 3 of the New Mexico Constitution and Section

3

7-36-7(B)(1)(d) of the New Mexico Property Tax Code. The Assessor denied the claim because "El Castillo's donation of services or facilities is minimal." The Assessor acknowledged that the Legislature did not textually set forth a minimum level of charitable donation in Section 7-36-7(B)(1)(d) but concluded that "because the constitutional grant of exemption requires primary and substantial charitable use of the property, so must the statute."

{7}     El Castillo protested the Assessor's denial to the Santa Fe County Valuation Protests Board. The Board upheld the Assessor's denial of the property-tax exemption after finding that El Castillo had not "donate[d] or render[ed] gratuitously a portion of its services or facilities" as the terms of Section 7-36-7(B)(1)(d) require. The Board did not purport to address the constitutional issue separately because El Castillo did not argue for an exemption under Article VIII, Section 3 separate from the statutory grounds, and the parties agreed that the Board did not have jurisdiction to address the "constitutional issue with regard to the statute itself."

{8}     El Castillo appealed the Board's decision to the district court pursuant to the district court's appellate jurisdiction. El Castillo asked the district court to review the Board's decision which denied the exemption on statutory grounds. El Castillo argued that the Board's decision "was not supported by substantial evidence and was reached

4

in an arbitrary and capricious manner." Additionally, El Castillo asked the district court to exercise its original jurisdiction and decide whether El Castillo was exempt from property valuation under Article VIII, Section 3 of the New Mexico Constitution.

{9} El Castillo argued that by enacting Section 7-36-7(B)(1)(d) the Legislature had made a policy decision within its purview, giving "new depth and meaning to Article VIII, Section 3" in "acknowledg[ing] the great public benefit provided by nonprofit continuing care retirement communities" and by "helping assure [their] financial viability," noting that the exemption is available to such communities that meet the other requirements of Section 7-36-7(B)(1)(d) "so long as a portion of services and facilities are donated or rendered gratuitously." In addition, El Castillo argued that satisfaction of the statutory claim necessarily satisfied the constitutional claim in "alleviating a burden on the government by sustaining its members to a significant degree, certainly far more than the tax burden that it is seeking to relieve itself of."

{10} The district court did not exercise its appellate jurisdiction over the Board's decision interpreting Section 7-36-7(B)(1)(d) but instead exercised its original jurisdiction over both El Castillo's statutory and constitutional claims. Without addressing any of the Board's findings of fact, the district court issued new findings

of fact which contradicted the findings of the Board. The district court concluded that Article VIII, Section 3 was not self-executing and that by enacting Section 7-36-7(B)(1)(d), the Legislature had "spelled out how the constitutional provision 'used for charitable purposes' is to be interpreted." Consequently the district court declined to "read into the statute a requirement that El Castillo render a 'primary or substantial' public benefit" and held that, by meeting the plain language requirements of Section 7-36-7(B)(1)(d), El Castillo had also fulfilled the charitable use requirements for tax exemption under Article VIII, Section 3 of the New Mexico Constitution.

{11} The Santa Fe County Assessor appealed the district court's decision to the Court of Appeals as an appeal of right pursuant to Rule 12-201 NMRA and Rule 12-202 NMRA. *El Castillo Ret. Residences v. Martinez*, 2015-NMCA-041, ¶ 7, 346 P.3d 1164. The Assessor argued that an appeal of right was the proper procedure because the district court utilized only its original jurisdiction and not its appellate jurisdiction when making its determination.

{12} The Court of Appeals determined it only had jurisdiction to review whether El Castillo met the constitutional requirements for the tax exemption, not whether El Castillo was entitled to a tax exemption under the statute. It held that the notice of appeal and docketing statement "were sufficient to perfect the appeal of the

6

constitutional issue . . . [but that] the Assessor failed to file a petition for writ of certiorari to perfect his appeal as to the statutory issue first decided by the Protest Board and reviewed by the district court in its appellate jurisdiction." *Id.* ¶ 8.

{13} The Court of Appeals reversed the district court's conclusion that El Castillo was constitutionally exempt from property taxation and held that "El Castillo did not directly and immediately use its property primarily and substantially for a charitable purpose recognized under Article VIII, Section 3 of the New Mexico Constitution because it does not confer a substantial benefit of real worth and importance to an indefinite class of persons who are members of the general public." *El Castillo*, 2015-NMCA-041, ¶¶ 44-45. Because the Court of Appeals refused jurisdiction to review whether El Castillo was eligible for tax exemption under the statute, it did not discuss the relationship between Article VIII, Section 3 and Section 7-36-7(B)(1)(d) or specify whether its reversal of the district court on constitutional grounds left intact the district court's ruling that El Castillo was entitled to exemption under the statute. *See El Castillo*, 2015-NMCA-041 ¶ 12.

{14} We granted certiorari to consider the constitutional and statutory provisions that govern permissible exemptions from equal taxation of real property in New Mexico and to clarify the subject matter appropriate for appellate review in

7

circumstances such as these.

## II. DISCUSSION

{15} Article VIII, Section 3 of the New Mexico Constitution provides no specifics in its exemption of "all property used for . . . charitable purposes" from property taxation. The Legislature, which previously had recognized in Section 7-36-7(B)(1) that taxes may not be imposed on "property exempt from property taxation under the federal or state constitution, federal law, the Property Tax Code or other laws," added Subsection (B)(1)(d) in a 2008 amendment, providing that

> this includes property that is operated either as a community to which the Continuing Care Act . . . applies or as a facility licensed by the department of health to operate as a nursing facility, a skilled nursing facility, an adult residential care facility, an intermediate care facility or an intermediate care facility for the developmentally disabled; and is owned by a charitable nursing, retirement or long-term care organization that: 1) has been granted exemption from the federal income tax by the United States commissioner of internal revenue as an organization described in Section 501(c)(3) of the Internal Revenue Code of 1986, as amended or renumbered; 2) donates or renders gratuitously a portion of its services or facilities; and 3) uses all funds remaining after payment of its usual and necessary expenses of operation, including the payment of liens and encumbrances upon its property, to further its charitable purpose, including the maintenance, improvement or expansion of its facilities.

The statute provides no guidelines for determining what level of charitable donations will satisfy the requirement of donating or rendering gratuitously "a portion of its

8

services or facilities." *Id.*

{16} El Castillo asserts that it is entitled to be exempt from taxation because it has met the terms of the statute but does not challenge the Court of Appeals holding that it is not exempt under Article VIII, Section 3 of the New Mexico Constitution. The Assessor argues that El Castillo's failure to meet the requirements of Article VIII, Section 3 necessarily means that Section 7-36-7(B)(1)(d) cannot be constitutionally applied to grant El Castillo an exemption. For the reasons that follow, we agree with the Assessor.

**A. The Assessor Has Standing to Challenge the Constitutionality of Section 7-36-7(B)(1)(d) as It Applies to El Castillo**

{17} As a preliminary matter, El Castillo challenges the Assessor's standing to raise the constitutionality of Section 7-36-7(B)(1)(d), relying on *State ex rel. Overton v. N.M. State Tax Comm'n*, 1969-NMSC-140, ¶¶ 8, 19-20, 81 N.M. 28, 462 P.2d 613. Although El Castillo raises the issue for the first time in this Court, "the lack of [standing] is a potential jurisdictional defect, which may not be waived and may be raised at any stage of the proceedings." *Gunaji v. Macias*, 2001-NMSC-028, ¶ 20, 130 N.M. 734, 31 P.3d 1008 (internal quotation marks and citations omitted). "[S]tanding in our courts is not derived from the state constitution, and is not jurisdictional" unless the cause of action is created by statute. *Deutsche Bank Nat'l*

9

*Trust Co. v. Johnston*, 2016-NMSC-013, ¶ 11, 369 P.3d 1046 (internal quotation marks and citation omitted). Nevertheless, "as a matter of judicial policy if not of jurisdictional necessity, our courts have generally required that a litigant demonstrate injury in fact, causation, and redressability to invoke the court's authority to decide the merits of a case." *Id.* ¶ 13 (internal quotation marks and citation omitted).

{18}     In *Overton*, this Court held that a county assessor did not have standing to bring a declaratory judgment action challenging the constitutionality of a tax-exemption statute because no justiciable controversy was present. *See* 1969-NMSC-140, ¶¶ 1, 9, 19. *Overton* is not applicable to the standing analysis in this case because asking this Court to decide the constitutionality of Section 7-36-7(B)(1)(d) as it applies to El Castillo is not a request for a declaratory judgment. Here, a justiciable controversy exists with regard to El Castillo's claim of entitlement to a tax exemption. This is not a theoretical question, and the Assessor does have an interest in the outcome. *See* NMSA 1978, § 7-36-2(A) (1995) ("The county assessor is responsible and has the authority for the valuation of all property subject to valuation for property taxation purposes."); NMSA 1978, § 7-38-17(G) (2011) ("A county assessor or the assessor's employee who knowingly permits a claimant for an exemption to receive the benefit of an exemption to which the claimant is not entitled

10

is guilty of a misdemeanor and shall be punished by a fine of not more than one thousand dollars ($1,000) and shall also be automatically removed from office or dismissed from employment upon conviction under this subsection."). When El Castillo filed the appeal from the Board's decision, the district court properly joined the Assessor as an appellee. There is no party more appropriate than the Assessor to appeal the decision of the district court.

{19}     We conclude that the Assessor has standing to bring before the appellate courts the statutory and constitutional issues relating to whether El Castillo is entitled to an exemption from real property taxation.

**B.      Both the District Court and the Court of Appeals Erred in Their Exercise of Appellate Jurisdiction**

{20}     It is incumbent on this Court to address the jurisdictional errors which occurred in the exercise of appellate jurisdiction in both the district court and the Court of Appeals. Jurisdictional questions are questions of law which this Court reviews de novo. *Smith v. City of Santa Fe*, 2007-NMSC-055, ¶ 10, 142 N.M. 786, 171 P.3d 300. "A jurisdictional defect may not be waived and may be raised at any stage of the proceedings, even sua sponte by the appellate court." *Armijo v. Save 'N Gain*, 1989-NMCA-014, ¶ 4, 108 N.M. 281, 771 P.2d 989; *see* Rule 12-216(B) NMRA.

**1.      The District Court Erred When It Did Not Exercise Its Appellate**

**Jurisdiction over the Board's Determination**

{21}     The Legislature conferred power in the district court to review, as a court of first appeal, a final decision of the Board. *See* NMSA 1978, § 7-38-28(A) (2015); NMSA 1978, § 39-3-1.1 (1999). When acting in its appellate role, the district court may reverse an agency decision if it determines that "(1) the agency acted fraudulently, arbitrarily, or capriciously; (2) the final decision was not supported by substantial evidence; or (3) the agency did not act in accordance with law." Section 39-3-1.1(D). The district court, in its appellate capacity, "is limited in the same manner as any other appellate body . . . and must defer to the agency's factual determinations if supported by substantial evidence." *N.M. Bd. of Psychologist Exam'rs v. Land*, 2003-NMCA-034, ¶ 5, 133 N.M. 362, 62 P.3d 1244.

{22}     In addition to its appellate jurisdiction, the district court has "original jurisdiction in all matters and causes not excepted in this constitution." N.M. Const. art. VI, § 13. The district court is a court of general jurisdiction and has the authority to consider all matters not exclusive to other courts, including constitutional claims in the first instance. *Maso v. N.M. Tax'n & Revenue Dep't*, 2004-NMCA-025, ¶ 14, 135 N.M. 152, 85 P.3d 276 ("[T]he district court has the authority to consider constitutional claims in the first instance.").

12

{23} A "district court can simultaneously exercise its appellate and original jurisdiction." *Id.* ¶ 17. On appeal to a district court of claims first considered by an agency, where the appeal also asserts constitutional and other claims in the district court that were beyond the scope of the agency's adjudicative authority, "the district court should consider each claim according to its appropriate standard of review and maintain the distinction between the court's appellate and original jurisdiction in rendering its decision." *Id.*

{24} The district court should have exercised its appellate jurisdiction over the Board's determination regarding the applicability of Section 7-36-7(B)(1)(d) to El Castillo and reviewed whether the Board's decision was arbitrary and capricious, unsupported by substantial evidence, or otherwise contrary to law as required under Section 39-3-1.1(D). Exercising its original jurisdiction over the statutory claim and issuing new findings of fact which contradicted the findings of the Board was error. In issuing new findings of fact, the district court acted outside its proper appellate jurisdiction. *See, e.g.*, *Cadena v. Bernalillo Cty. Bd. of Cty. Comm'rs*, 2006-NMCA-036, ¶ 3, 139 N.M. 300, 131 P.3d 687 (concluding that "the district court acted outside of its capacity as an appellate court by engaging in fact-finding"); *VanderVossen v. City of Espanola*, 2001-NMCA-016, ¶ 26, 130 N.M. 287, 24 P.3d

13

319 ("[T]he district court exercising appellate jurisdiction under Section 39-1-1.1[] is not a fact-determining body."); *Hahn v. Cty. Assessor for Bernalillo Cty. (In re Miller)*, 1975-NMCA-116, ¶ 52, 88 N.M. 492, 542 P.2d 1182 ("If there is substantial evidence in the record to support a decision of a county valuation protests board, [an appellate court is] bound thereby."), *rev'd on other grounds*, 1976-NMSC-039, 89 N.M. 547, 555 P.2d 142. Had the district court reviewed the Board's determination under the proper standard of review, it is likely the district court's determination would have been different.

**2. The Court of Appeals Erred When It Refused Jurisdiction to Review the Constitutionality of the Section 7-36-7(B)(1)(d) Exemption as Applied to El Castillo**

{25} In addition to the district court's jurisdictional error, the Court of Appeals erred when it reviewed the constitutional question apart from the statutory question. The Court of Appeals took the position that it did "not have jurisdiction to review the question of whether El Castillo is entitled to a charitable property-tax exemption under Section 7-36-7(B)." *El Castillo*, 2015-NMCA-041, ¶ 12. This determination by the Court of Appeals improperly disregards the relationship between the New Mexico Constitution and the statutes enacted by the Legislature. A statute must be interpreted and applied in harmony with constitutionally imposed limitations. *See* NMSA 1978,

14

§ 12-2A-18(A)(3) (1997) ("A statute or rule is construed . . . [to] avoid an unconstitutional . . . result."); *Wells v. Cty. of Valencia*, 1982-NMSC-048, ¶ 11, 98 N.M. 3, 644 P.2d 517 ("[T]he Legislature is presumed to have enacted the statute within the bounds of the constitution, and, to that end, we must so construe the statute."). The constitutional and statutory claims as argued by the parties, considered and decided by the district court, and raised on appeal to the Court of Appeals were intertwined and inseparable. The Court of Appeals erred when it did not decide whether El Castillo could be exempt from property taxation under Section 7-36-7(B)(1)(d) despite its constitutional ineligibility for exemption. Accordingly, we granted certiorari to address this issue.

**C.      Legislation Granting Tax Exemptions Must Be Interpreted in Light of Restrictions Set Forth in Article VIII of the New Mexico Constitution**

{26}     Whether Section 7-36-7(B)(1)(d) can grant a tax exemption to El Castillo raises issues of constitutional interpretation that we review de novo. *Pinghua Zhao v. Montoya*, 2014-NMSC-025, ¶ 11, 329 P.3d 676. "The Legislature's inherent authority and discretion to exercise the State's power of taxation is plenary 'except in so far as limited by the Constitution.'" *Id.* ¶ 14 (citation omitted).

> "[S]tate constitutions are not grants of power to the legislative, to the executive and to the judiciary, but are limitations on the powers of each. No branch of the state may add to, nor detract from its clear mandate. It

15

is a function of the judiciary when its jurisdiction is properly invoked to measure the acts of the executive and the legislative branch solely by the yardstick of the constitution."

*State ex rel. Clark v. Johnson*, 1995-NMSC-048, ¶ 20, 120 N.M. 562, 904 P.2d 11 (citation omitted).

{27} We presume that enactments of the Legislature are within constitutional boundaries, and we "give effect to the legislative intent unless it clearly appears to be in conflict with the Constitution." *Bounds v. State ex rel. D'Antonio*, 2013-NMSC-037, ¶ 11, 306 P.3d 457 (internal quotation marks and citation omitted). "[I]t is the particular domain of the legislature, as the voice of the people, to make public policy." *Hartford Ins. Co. v. Cline*, 2006-NMSC-033, ¶ 8, 140 N.M. 16, 139 P.3d 176 (alteration in original) (internal quotation marks and citation omitted).

{28} *El Castillo* relies heavily on *La Vida Llena v. Montoya*, 2013-NMCA-048, ¶¶ 5-6, 20, 299 P.3d 456, for the proposition that constitutional standards have no bearing on the application of Section 7-36-7(B)(1)(d). In *La Vida Llena* the Court of Appeals looked only at the facial text of Section 7-36-7(B)(1)(d) to reach its holding that the statutory requirement that the facility "donates or renders gratuitously a portion of its facilities or services" imposed no threshold on the amount of the donation. *Id.* ¶ 1. The Court of Appeals did not consider whether Section 7-36-

16

7(B)(1)(d) was limited by Article VIII or whether the facility in question would have qualified for exemption under that constitutional limitation. Because we hold that Section 7-36-7(B)(1)(d) must be read in light of Article VIII, Section 3 of the New Mexico Constitution, we overrule *La Vida Llena* to the extent that it may be read to indicate otherwise.

{29} New Mexico law is clear in concluding that Article VIII, Section 3 is self-executing and does not require statutory enactment. *See CAVU Co. v. Martinez*, 2014-NMSC-029, ¶ 15, 332 P.3d 287 ("'Unlike most constitutional exemptions, [Article VIII, Section 3] does not merely define a field of exemption, within which the legislative power may operate from time to time at its discretion. It is affirmative and self-executing. It creates exemptions. It invests citizens with constitutional rights, which administrative officers or Legislature may not impair, and which courts must protect.'" (quoting *Temple Lodge No. 6, A.F. & A.M. v. Tierney*, 1933-NMSC-013, ¶ 29, 37 N.M. 178, 20 P.2d 280)). Article VIII, Section 3 operates as a limit on the Legislature's power to redefine categories of property which will be exempt from taxation. *See Clark*, 1995-NMSC-048, ¶ 20; *see also Dillard v. N.M. Tax Comm'n*, 1948-NMSC-069, ¶¶ 5-9, 53 N.M. 12, 201 P.2d 345 (interpreting Article VIII, Sections 1, 3, and 5 and concluding that "[t]he property of the wife of a soldier or

sailor is not exempt from taxation, nor can the legislature enact a statute that will have that effect without [a constitutional] amendment authorizing it"); *Sims v. Vosburg*, 1939-NMSC-026, ¶ 4, 43 N.M. 255, 91 P.2d 434 (relying on Article VIII, Sections 1, 3, and 5 in stating that "[a]ll tangible property in New Mexico is subject to taxation in proportion to value, and should be taxed, unless specifically exempted by the constitution or by its authority"); *State ex rel. Att'y Gen. v. State Tax Comm'n*, 1936-NMSC-029, ¶ 8, 40 N.M. 299, 58 P.2d 1204 ("By the terms of section 3 of article 8, certain specific property is exempt from taxation, and by section 5 thereof the Legislature is authorized to exempt from taxation certain other specific property; and no other property is or can be exempted. The Constitution, in effect, classes tangible property into that exempt from taxation, that which may be exempted, and that which must be taxed."); *Albuquerque Alumnae Ass'n of Kappa Kappa Gamma Fraternity v. Tierney*, 1933-NMSC-011, ¶¶ 3, 9-10, 26, 37 N.M. 156, 20 P.2d 267 (rejecting a statute-based claim of tax exemption for a college sorority property and holding that "the Constitution makers intended to cover the whole field of exemption," that "[Article VIII,] Section 3 is affirmative and self-executing," that "[i]t creates exemptions," and that "[t]here is a strong presumption against an intent to permit the Legislature to create others").

18

{30}   The people always have the power to amend constitutional restrictions by expressly and lawfully doing so. For example, New Mexico voters have amended Article VIII, Section 3 to give a supermajority of the Legislature the limited authority to exempt personal property from taxation. *See, e.g.*, 1972 N.M. Laws, Constitutional Amendment 2, at 703-04 (proposing the 1972 constitutional amendment to Article VIII, Section 3 that granted the Legislature authority to exempt personal property by statute upon passage by a three-fourths majority vote of all members). But no constitutional authority has been granted for the Legislature to exempt real property by statute. Consequently, Section 7-36-7(B)(1)(d) may not be interpreted or applied to grant exemptions that are not authorized by Article VIII, Section 3.

**D.   El Castillo Does Not Qualify for Tax Exemption Under Article VIII, Section 3 or Section 7-36-7(B)(1)(d) Because Its Property Does Not Create Substantial Public Benefit Through Primary Use That Furthers a Constitutionally Authorized Exempt Purpose**

{31}   Controlling New Mexico precedent has consistently interpreted Article VIII, Section 3 to exempt only property that creates substantial public benefit through use that directly, immediately, primarily, and substantially furthers its exempt purpose. *See, e.g.*, *CAVU*, 2014-NMSC-029, ¶¶ 21-23, 29-30 (applying this framework in analyzing whether use of a property furthers exempt purposes). This is not a mechanical test of eligibility for exemption but instead requires a flexible inquiry

19

allowing fact-specific determinations informed by history and policy considerations. *Id.* ¶¶ 13, 20. Accordingly, the interpretation of these limits may vary depending upon the particular property and use at issue. *See, e.g.*, *Pecos River Open Spaces, Inc. v. Cty. of San Miguel*, 2013-NMCA-029, ¶¶ 22-25, ___ P.3d ___ (allowing an exemption for vacant, undeveloped, and unimproved land when it provided substantial public benefit in its idle state and where such use furthered its charitable purpose of conservation); *Georgia O'Keeffe Museum v. Cty. of Santa Fe*, 2003-NMCA-003, ¶ 56, 133 N.M. 297, 62 P.3d 754 (interpreting the requirement of direct and immediate use for educational purposes broadly to permit consideration of the intrinsic educational value of a museum and of off-site educational programs and activities closely related to the museum collection).

{32} Despite the flexible nature of our analysis, "[t]he exemption granted [to] educational and charitable institutions proceeds upon the theory of the public good accomplished by them and the peculiar benefits derived by the public in general from their conduct." *Pecos River Open Spaces*, 2013-NMCA-029, ¶ 9 (internal quotation marks and citation omitted). The rationale for exemption depends upon an "implicit quid pro quo between the State and an exempt organization." *CAVU*, 2014-NMSC-029, ¶ 30. "'Property which is exempt from taxation does not share in the burden [of

20

paying for the cost of government]. Therefore, in exchange for its exempt status, [the use of] such property must confer a substitute substantial benefit on the public.'" *Id.* (quoting *NRA Special Contribution Fund v. Bd. of Cty. Comm'rs*, 1978-NMCA-096, ¶ 38, 92 N.M. 541, 591 P.2d 672). A substantial public benefit is "[a] benefit of real worth and importance to an indefinite class of persons who are a part of the public." *NRA*, 1978-NMCA-096, ¶ 45.

{33}     Applying these standards, the Court of Appeals correctly determined that El Castillo's use of its property did not create any substantial public benefit. *See El Castillo*, 2015-NMCA-041, ¶¶ 30-32, 44. A facility that cares for the elderly might be entitled to a charitable use exemption if, in doing so, it benefits the general public. *See Ret. Ranch, Inc. v. Curry Cty. Valuation Protest Bd.*, 1976-NMCA-010, ¶¶ 6, 9-10, 89 N.M. 42, 546 P.2d 1199 (allowing exemption based on charitable use where a facility cared for an aged "sick and largely indigent" population dependent on Medicare and Medicaid). But El Castillo is a self-sustaining community that accepts and benefits only financially and medically screened residents based on requirements calculated in the interests of financial security for El Castillo. These residents collectively pay for all the services El Castillo provides, and if the care they need eventually exhausts the resources provided by particular residents' admission and

monthly fees, any additional care they receive is paid for by the surplus fees collected from other residents. While El Castillo claims it has not yet forced relocation of a resident for inability to pay monthly fees, the express contractual language gives El Castillo the sole discretion to terminate the resident agreement for that reason.

{34} A self-sustaining community does not qualify as a charity merely because it does not profit from its enterprise. *See Mountain View Homes, Inc. v. State Tax Comm'n*, 1967-NMSC-092, ¶ 15, 77 N.M. 649, 427 P.2d 13 (holding that a nonprofit housing development built for low and moderate income workers was not charitable because the "tenants [were] required to pay for the premises occupied by them with the rentals being fixed so as to return the amount estimated as being necessary to pay out the project"). Even the possibility that El Castillo will subsidize some residents is not charitable when those subsidies are paid for by the fees collected from residents who did not require subsidization. In a business-economics sense, El Castillo functions as a nonprofit provider of long-term care insurance, and like any insurance company it may pay out more to a particular individual than that person has paid in. But just as with private health or disability or other insurance that avoids dependence on public assistance for the policyholders or beneficiaries, providing for its own paying participants cannot be characterized as charitable.

{35}     Other jurisdictions have likewise concluded that continuing care retirement facilities with similar admission requirements and financial structures are ineligible for a charitable purpose tax exemption. *See, e.g.*, *Cape Ret. Cmty., Inc. v. Kuehle*, 798 S.W.2d 201, 202-04 (Mo. Ct. App. 1990) (holding that a nonprofit, life care, retirement, housing, and nursing facility admitting only those with financial resources sufficient to meet the facility costs was not entitled to exemption from property taxation despite assuming obligations for residents who became insolvent, reasoning that "[i]t is not enough that Cape Retirement regularly underwrites some of the costs of qualified residents and agrees to fully support selected residents *if* such residents suffer financial reverses because its retirement home is not equally available to both rich and poor" and therefore "is not operated to benefit society generally" as required of a charity); *Presbyterian Homes of Synod of N.J. v. Div. of Tax Appeals*, 261 A.2d 143, 149-50 (N.J. 1970) (holding that a nonprofit continuing care retirement community in which residents paid for services received did not qualify for the charitable purpose tax exemption based on several "persuasive factors" including its contractual right to terminate a resident agreement for inability to pay); *Christian Home for the Aged, Inc. v. Tenn. Assessment Appeals Comm'n*, 790 S.W.2d 288, 292-93 (Tenn. Ct. App. 1990) (holding that a retirement community admitting only

individuals meeting financial and physical requirements was not eligible for the charitable use tax exemption because, "though the benefits of the [community] are significant, only those who are financially and physically well off can receive them [while t]hose less healthy and wealthy are not benefited").

{36}     Under the facts presented in this record, El Castillo does not provide any benefit to an indefinite class of persons who are members of the general public. We hold that it cannot be entitled to exemption from taxation under Section 7-36-7(B)(1)(d) simply by being a continuing care facility without also creating a substantial public benefit that would entitle it to exemption from equal taxation as authorized by Article VIII, Section 3 of the New Mexico Constitution.

**III.    CONCLUSION**

{37}     We hold that El Castillo is not entitled to property-tax exemptions under either Section 7-36-7(B)(1)(d) or Article VIII, Section 3 of the New Mexico Constitution. We reverse the district court and remand for entry of a judgment in conformity with this opinion.

{38}     **IT IS SO ORDERED.**

_____
**CHARLES W. DANIELS, Justice**

24

**WE CONCUR:**

_____
**JUDITH K. NAKAMURA, Chief Justice**

_____
**PETRA JIMENEZ MAES, Justice**

_____
**EDWARD L. CHÁVEZ, Justice**

_____
**KAREN L. TOWNSEND, Judge, sitting by designation**

25